IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH N. TURTURRO, *ADMINISTRATOR* | : | |
| *OF THE ESTATE OF ADAM B. BRADDOCK,* | : | |
| *DECEASED* | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 10-2460 |
| UNITED STATES OF AMERICA, *FEDERAL* | : | |
| *AVIATION ADMINISTRATION*, ET AL. | : | |

---

| | | |
|---|---|---|
| CHARLES ANGELINA, *INDIVIDUALLY* | : | |
| *AND AS PERSONAL REPRESENTATIVE OF* | : | |
| *THE ESTATE OF CHARLES ANTHONY* | : | |
| *ANGELINA, DECEASED*, ET AL. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 10-3063 |
| UNITED STATES OF AMERICA, *FEDERAL* | : | |
| *AVIATION ADMINISTRATION*, ET AL. | : | |

**SURRICK, J.**                                                                    **MAY  16  , 2012**

**MEMORANDUM**

Presently before the Court are Defendant United States of America's Motions to Dismiss

for Lack of Jurisdiction.  (ECF Nos. 34, 36, No. 10-2460.)  For the following reasons, the

Motions will be denied.

**I.      BACKGROUND**

These consolidated lawsuits arise as a result of an airplane accident that caused the death

of flight instructor Adam Braddock and his student Charles Angelina.[1]  Plaintiff Joseph Turturro,

---

[1] On October 15, 2010, these two actions—*Turturro v. United States*, No. 10-2460 (E.D. Pa. May 21, 2010), and *Angelina v. United States*, No. 10-3063 (E.D. Pa. June 24, 2010)—were consolidated for all purposes under Civil Action No. 10-2460. (ECF No. 22.)  The substantive

administrator of Braddock's estate, and Plaintiffs Charles and Virginia Angelina, representatives

of Angelina's estate, allege the following facts.

On May 22, 2008, Angelina was taking flight lessons in a small aircraft ("accident

aircraft") at the Northeast Philadelphia Airport with Braddock.  Angelina was practicing touch-

and-go landings, during which an aircraft lands on a runway and takes off again without coming

to a complete stop.  The pilot enters into a traffic pattern, circles the airport, communicates with

air traffic control for clearance, and then repeats the process.  Defendant United States operates

the air traffic control system at the airport.

The accident aircraft departed the end of Runway 33 and was about to enter into the

traffic pattern when an air traffic controller switched traffic patterns from left to right, without

giving the instruction to make this maneuver "speed and altitude permitting," as previously

instructed.  (Turturro SAC ¶ 15.)  Immediately prior to this final departure, a large helicopter

controlled by Defendant Agusta was hovering in the vicinity of the Gulf and Juliet taxiways.  (*Id.*

at ¶ 20.)  Plaintiffs allege that the helicopter generated invisible wake vortices, rotor downwash

and wake turbulence.  After hovering, the helicopter commenced forward flight, and either

crossed over the departure end of Runway 33, or came within its proximity.  (*Id.* at ¶ 35.)  This

forward movement increased the helicopter's wake turbulence and rotor downwash, and created

a closure and collision risk with the accident aircraft.  (*Id.* at ¶¶ 20-21.)  In addition, shortly

before the accident aircraft was cleared for takeoff, a jet departed from Runway 24, which

---

facts alleged in the Turturro Second Amended Complaint (ECF No. 33) are, for the most part,
identical to those alleged in the Angelina Second Amended Complaint (ECF No. 23, No. 10-
3063).  We will refer to the allegations in the Turturro Second Amended Complaint ("SAC"),
unless otherwise noted.

created wake turbulence and vortices for the accident aircraft as it prepared to depart from Runway 33.  (*Id.* at ¶ 22.)

Angelina followed the right traffic pattern as advised.  (*Id.* at ¶ 23.)  This instruction placed the accident aircraft in the helicopter's and jet's invisible wake vortices, and created a collision risk.  The accident aircraft lost control and crashed into a parking lot, killing Angelina and Braddock.

Following the accident, Plaintiff Joseph Turturro and Plaintiffs Charles and Virginia Angelina filed separate, but similar, Standard Form 95s with the Federal Aviation Administration.  (Turturro Form 95, Turturro Resp. Ex. 1, ECF No. 45; Angelina Form 95, Angelina Resp. Ex. B, ECF No. 46.)[2]  Turturro alleged in his administrative claim that as the accident aircraft approached the departure end of Runway 33, "it encountered the vortex of a helicopter, operated by Agusta . . . resulting in the accident aircraft being thrown to the ground by that helicopter wake turbulence which caused the crash."  (Turturro Form 95 at 1.)  The controllers were fully aware of the wake turbulence that emanates from large helicopters and the danger it creates for small aircraft.  Notwithstanding this knowledge, and in violation of air traffic control instructions, the controllers cleared the helicopter "across the duty runway and then allow[ed] it to slowly hover in the vicinity of the departure end with the wind blowing the turbulence right at the departure end, knowing they had cleared the accident aircraft to make a touch and go landing on the same runway."  (*Id.* at 2.)  The accident occurred without a required wake turbulence warning, without a suggestion to abandon the touch-and-go landing, and without a warning to the helicopter to depart from a separate runway.

---

[2]  We refer to the allegations in the Turturro Form 95, unless otherwise indicated.

In addition to these allegations, both administrative claims incorporate by reference the identical expert report of Richard Wentworth.  (Wentworth Report, Turturro Resp. Ex. 2; Wentworth Report, Angelina Resp. Ex. B.)  Wentworth is a former air traffic control investigator with the National Transportation Safety Board.  In his report, Wentworth advised that at the time of the accident, there were three controllers in the airport's tower.  (Wentworth Report 1.)  The local controller, who had been in position for five minutes, "failed to provide service, she failed to issue traffic information, she failed to provide adequate spacing and sequence and finally she failed to issue a wake turbulence advisory." (*Id.*)  Wentworth also advised that "the local controller should have been very familiar with the scenario she was faced with concerning the [accident aircraft] conducting a touch and go and the Agusta waiting to depart." (*Id.*)  In addition, Wentworth indicated that the "fact that no traffic information was given to the [accident aircraft] may have created a startle effect once the instructor realized there was a helicopter in close proximity to their position." (*Id.* at 2.)  After reviewing the radar data, Wentworth determined that at the time of the accident, the helicopter and the accident aircraft were 900 feet apart—significantly less than the required minimum distance of 3,000 feet between successive departures. (*Id.*)  Wentworth asserted that the helicopter should not have been permitted to depart in front of the accident aircraft.  The controllers should have known that "the presence of rotor wash from the departing helicopter was highly likely." (*Id.* at 3.)  "In summary, the decision to allow the helicopter to depart ahead of and in front of the [accident aircraft] was irresponsible." (*Id.*)

On June 17, 2010, the FAA denied both administrative claims.[3]   (Angelina Mot. Dismiss Ex. 4, ECF No. 34; Turturro Mot. Dismiss Ex. 3, ECF No. 36.)  Turturro and the Angelinas filed lawsuits on May 21, 2010 and June 24, 2010, respectively.  Plaintiffs thereafter took several depositions and filed separate Second Amended Complaints, which include claims against the United States for negligence (Count I) and spoliation of evidence, obstruction of justice, and unconstitutional violation of due process (Count II), and against Agusta for negligence (Count III) and breach of contract (Count IV).

The United States now moves to dismiss the Second Amended Complaints for lack of subject matter jurisdiction.  The United States argues that many of the substantive allegations in the Second Amended Complaints are new and were never presented to the FAA for review.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) requires a court to grant a motion to dismiss if it lacks subject matter jurisdiction over the case.  Rule 12(b)(1) motions may present either a facial or factual challenge to subject matter jurisdiction.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  If a defendant brings a facial attack, the court confines itself to the pleadings and views the allegations in the light most favorable to the plaintiff.  *United States*

---

[3] Although the procedural history of these cases is complicated, it has no impact on the disposition of these Motions.  For an outline of the numerous lawsuits that have been filed based on the same underlying airplane accident, see *Turturro v. Agusta Aerospace Corp.*, No. 10-2894, 2010 WL 3239199, at *1 (E.D. Pa. Aug. 13, 2010).  It is sufficient to note that Turturro and the Angelinas brought separate suits against Agusta in the Court of Common Pleas of Philadelphia County.  Agusta then filed third-party joinder complaints against the United States.  On June 16, 2010, both cases were removed to this Court.  The United States filed motions to dismiss for lack of subject-matter jurisdiction, which were granted in both matters.  *Turturro*, 2010 WL 3239199; *Angelina v. Agusta Aerospace Corp.*, No. 10-2895 (E.D. Pa. June 16, 2010), ECF No. 11.  Turturro and the Angelinas then filed new actions, which are the ones presently consolidated before the Court.

*ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).  If a defendant

presents a factual attack, the court is free to review evidence outside the pleadings.  *Id.*

The parties agree that the United States has launched a factual attack on subject matter

jurisdiction because it contends that Plaintiffs have failed to satisfy the jurisdictional

prerequisites of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*  Consequently,

"the Court is free to weigh the evidence and satisfy itself whether it has power to hear the case."

*Carpet Grp. Int'l v. Oriental Rug Imps. Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000).

## III.   DISCUSSION

The FTCA waives the sovereign immunity of the United States for certain tort claims.

*Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 483 (2006).  The FTCA provides that with respect to

tort claims, the federal government shall be liable "in the same manner and to the same extent as

a private individual under like circumstances."  28 U.S.C. § 2674.  To maintain suit against the

United States, a claimant must first satisfy the statutory notice requirement of 28 U.S.C.

§ 2675(a), which states, "action shall not be instituted upon a claim against the United States" for

damages "caused by the negligent or wrongful act or omission of any employee of the

Government while acting within the scope of his office or employment, unless the claimant shall

have first presented the claim to the appropriate Federal agency and his claim shall have been

finally denied."

The filing of an administrative claim is a "jurisdictional requirement and an absolute

prerequisite to maintaining a civil action against the government under the FTCA."  *Valenzuela*

*v. Thrifty Rent-A-Car*, No. 94-7752, 1995 WL 708109, at *3 (E.D. Pa. Nov. 20, 1995); *Roma v.*

*United States*, 344 F.3d 352, 362 (3d Cir. 2003).  The purpose of the notice requirement is to

"ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." *Tucker v. U.S. Postal Serv.*, 676 F.2d 954, 958 (3d Cir. 1982) (quoting legislative history). In addition, claim presentment to the appropriate federal agency provides for "more fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved in litigation with their Government." *Id.*

In the Third Circuit, an individual satisfies the Congressional requirement of "minimal notice" if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate, and (2) places a value on his or her claim. *Id.* at 958-59; *Roma*, 344 F.3d at 362-63; *Mennecke v. St. Vincent Health Ctr.*, No. 98-50, 2000 U.S. Dist. LEXIS 20006, at *7 (W.D. Pa. Mar. 31, 2000). "Although an administrative claim need not propound every possible theory of liability in order to satisfy section 2675(a) . . . a plaintiff cannot present one claim to the agency and then maintain suit on the basis of a different set of facts." *Roma*, 344 F.3d at 362 (citations omitted).

The United States argues that Plaintiffs placed a single issue before the FAA in their Form 95s:  that wake turbulence from a departing Agusta helicopter caused the crash. (Mot. Dismiss Angelina 2-3 (quoting Angelina Form 95 ("As the aircraft in which Mr. Angelina was training approached the departure end of Runway 33, it encountered the vortex of a helicopter, operated by Agusta . . . when it was thrown to the ground by the wake turbulence.")); Mot. Dismiss Turturro 2-3 (quoting Turturro Form 95 (same)).)  The United States argues that the Second Amended Complaints contain ten new factual claims that were not presented to the FAA. These allegations include:  1) rotor downwash generated by the helicopter as it hovered at the

intersection of the Golf and Juliet taxiways caused the crash; 2) the helicopter created a "closure and collision risk and hazard"; 3) wake turbulence from a jet that departed from Runway 24 caused the crash; 4) the controllers were improperly trained on rotor downwash from a hovering helicopter; 5) the controllers did not say "speed and altitude permitting" when instructing the pilots to make right traffic, leading the pilots to believe there was immediacy to the instruction; 6) the controllers allowed the helicopter to depart "in a manner inconsistent with a proposed Letter of Agreement between Agusta and the FAA PNE tower"; 7) the FAA failed to initiate a Letter of Agreement with Agusta prior to the accident; 8) the controllers failed to provide wind speed and direction to the pilots; 9) the FAA inadequately staffed the control tower "both in number and competency of personnel"; and 10) the controllers were not given adequate relief, subjecting them to fatigue.  (Mot. Dismiss Angelina 4-6; Mot. Dismiss Turturro 4-5.)  In addition, the United States argues that the Angelina Second Amended Complaint contains an eleventh new factual claim:  the controllers instructed the accident aircraft to make right traffic so as to unlawfully provide preferential treatment to the Agusta.

The United States maintains that these new claims must be dismissed because Plaintiffs failed to exhaust their administrative remedies.  According to the United States, the crux of Plaintiffs' administrative claims—that this was a wake turbulence accident—was the notion that the Agusta helicopter was allowed to cross over, and hover in the vicinity of, Runway 33 before the accident aircraft departed.  The United States points out that prior to filing their Second Amended Complaints, Plaintiffs deposed the pilot of the Agusta helicopter, who testified that the helicopter did not hover over the end of Runway 33 and that wake turbulence and wake vortices had "[a]bsolutely nothing" to do with the accident.  (Farr Dep. 222-24, Mot. Dismiss Turturro

Ex. 1.)  The United States argues that Plaintiffs now improperly seek to "maintain suit on the

basis of a different set of facts" after learning through discovery that their original understanding

of the accident was flawed.

The United States asserts that Plaintiffs now allege that instead of crossing over Runway

33 and creating wake turbulence, the helicopter created rotor wash as it hovered at the

intersection of the Golf and Juliet taxiways, which is approximately 3,000 feet behind the

departure end of Runway 33.  (Mot. Dismiss Angelina 5 n.5, 10.)  The United States protests that

"[s]imply saying wake turbulence is not enough to cover every aircraft operating at the airport no

matter where it is located, or when it departs."  (*Id.* at 10.)  Moreover, the United States argues

that the administrative claims made no mention of the jet on Runway 24, collision risks,

improper instructions, inadequate tower staffing, controller fatigue, or a proposed letter of

agreement.  The United States contends, in short, that Plaintiffs cannot end-run the statutory

notice requirement of the FTCA.

Plaintiffs respond that they do not present "new facts" or a "different set of facts," but

instead, merely bolster their Form 95s with more detailed allegations learned during the course of

discovery.  They argue that the facts alleged in the administrative claims were more than

sufficient to enable the FAA to conduct its investigation.

Addressing each of the eleven purportedly new factual claims in turn, the United States

argues that Plaintiffs never presented to the FAA their claim that rotor downwash generated by

the helicopter as it hovered at the intersection of the Golf and Juliet taxiways caused the accident.

This is too narrow a reading of Plaintiffs' Form 95s.  Plaintiffs do, indeed, advance wake

turbulence caused by the departing helicopter as their primary factual explanation of the accident.

However, Plaintiffs also provided the United States with notice of their rotor downwash theory. Plaintiffs' expert, Richard Wentworth, opined that the accident aircraft had "encountered the rotor wash" of the departing helicopter and that the controllers "should have known that the presence of rotor wash from the departing helicopter was highly likely."  (Wentworth Report 3.) Plaintiffs specifically mentioned the helicopter throughout their administrative claims and emphasized that the accident aircraft encountered its vortex.  Plaintiffs need not identify the precise location of the helicopter to survive the United States' Motions.  Plaintiffs must only provide the FAA with "minimal notice," which they have done.  Based on the facts alleged in the Form 95s, the United States certainly knew that an investigation of the position of the helicopter at the time of the accident as well as the effects of rotor downwash was appropriate.

The United States maintains that Plaintiffs' administrative claims contain no facts from which they could have known to investigate the "closure and collision risk."  However, Wentworth advised that the "fact that no traffic information was given to the [accident aircraft] may have created a startle effect once the instructor realized there was a helicopter in close proximity to their position."  (Wentworth Report 2.)  Moreover, Wentworth found that the controller "failed to provide adequate spacing and sequence" and that the pilots may have been "startled by the presence of the helicopter."  (*Id.* at 1, 3.)  These statements put the FAA on notice to investigate the closure and collision risk.

The United States argues that Plaintiffs did not put them on notice of their claim regarding wake turbulence from a jet on Runway 24 causing the accident.  We agree that much of Plaintiffs' administrative claims focuses on the wake turbulence generated by the helicopter. However, the fact that they did not mention another aircraft as a possible source of wake

turbulence does not defeat notice.  Wentworth cites FAA guidelines, which state, "[i]ssue

cautionary information to any aircraft if in your opinion, wake turbulence may have an adverse

effect on it."  (*Id.* at 3.)  The factual matter in the administrative claims should have generated an

investigation into the general role of wake turbulence, including a determination of whether other

aircrafts in the vicinity of Runway 33 could have caused the crash.

Plaintiffs allege in their Second Amended Complaints that the controllers were

improperly trained with regards to the effects of rotor downwash.  The United States argues that

this claim was not procedurally exhausted.  Wentworth's report states that the controller "failed

to provide service, she failed to issue traffic information, she failed to provide adequate spacing

and sequence and finally she failed to issue a wake turbulence advisory."  (*Id.* at 1.)  In

Wentworth's opinion, the "local controller should have been very familiar with the scenario she

was faced with concerning the [accident aircraft] conducting a touch and go and the Agusta

waiting to depart."  (*Id.*)  These allegations in the Form 95s concerning the controller's

negligence were sufficient to put the United States on notice of Plaintiffs' improper training

claims.

Plaintiffs allege that the controllers unlawfully instructed the accident aircraft to make

right traffic, and failed to advise the pilots that this instruction was "speed and altitude

permitting."  Plaintiffs asserted in their administrative claims that the controller "abruptly

switched patterns from left to right," an order that steered the accident aircraft into the wake

turbulence.  (Angelina Form 95 at 1; Turturro Form 95 at 2.)  This factual allegation was

sufficient to notify the United States that it should investigate the controller's instructions.

Plaintiffs allege that the controllers improperly authorized the helicopter to depart in a

manner that was inconsistent with a proposed Letter of Agreement between Agusta and the FAA.

Plaintiffs did not mention this proposed Letter in their administrative claims.  During discovery,

Plaintiffs learned that at the time of the accident the FAA and Agusta were negotiating a Letter of

Agreement, which sought to establish departure routes that did not require Agusta to pass over

active runways.  (Angelina Resp. 15.)  Plaintiffs have submitted a copy of the Letter, which

became effective on August 15, 2008, three months after the date of the accident.  (Angelina

Resp. Ex. M; Turturro Resp. Ex. 12.)  Plaintiffs alleged in their administrative claims that the

controllers were aware that helicopter departures can be made in any direction and that they do

not have to be made on the duty runway.  This statement provided notice to the United States that

it should investigate lawful departure routes for the helicopter, which would entail an inquiry into

any controlling letters of agreement.[4]

Plaintiffs allege that the FAA failed to initiate a Letter of Agreement with Agusta prior to

the accident.  For the above reasons, the statements made in the Form 95s placed the FAA on

notice of this claim.  The United States was informed that it should investigate appropriate

departure routes.  Its failure to execute a Letter of Agreement may affect this analysis.

Plaintiffs allege that the controllers did not provide wind speed and direction information

to the pilots of the helicopter.  In his expert report, Wentworth quoted the controller's instruction

to the Agusta prior to the accident:  "the [accident aircraft] will be in a left downwind departure,

from Golf and Juliet cleared for takeoff, proceed on course wind three three zero at eight,

---

[4] It is unclear how a negotiated, but unconsummated, agreement between the FAA and
Agusta would affect the legality of the Agusta departure.  Nevertheless, the United States was put
on notice that Plaintiffs would attempt to discover all materials that pertain to the underlying
facts in this case.

altimeter two niner six six." (Wentworth Report 1.)  This citation to the air traffic control

transcript placed the United States on notice that Plaintiffs were entitled to bring a claim alleging

improper instructions.  The United States certainly should have included the nature and propriety

of the controller's orders in its investigation.

Plaintiffs allege that the air traffic control tower was inadequately staffed "both in number

and competency of personnel."  Plaintiffs argue that there are two statements in Wentworth's

report that provided the United States with notice of this claim.  First, Wentworth advised, "[a]t

11:52:08, the local controller was relieved from the position and gave a relief briefing to his

replacement." (Wentworth Report 1.)  Second, he noted that at the time of the accident, "the

tower was manned with 3 controllers.  The local controller had been on the position for just a

little over 5 minutes." (*Id.*)  In Wentworth's opinion, the controller "failed to provide service,

she failed to issue traffic information, she failed to provide adequate spacing and sequence and

finally she failed to issue a wake turbulence advisory." (*Id.*)  These references to the number of

employees on duty at the time of the accident, coupled with the statements concerning the

controller's alleged instances of negligence, provided the United States with notice of a potential

inadequate staffing claim.

Plaintiffs allege that the controllers were not given appropriate relief, which caused

fatigue.  Plaintiffs argue that the foregoing statements regarding the inadequacy of the control

staff also provide the basis for this claim.  These averments in the expert report provided the

United States with notice that Plaintiffs could assert a claim based on the insufficient number of

controllers on duty, which could plausibly include this fatigue claim.  As the FTCA only requires

"minimal notice," we find that Plaintiffs presented this claim to the FAA such that it could

commence its investigation.

Finally, the Angelinas allege in their Second Amended Complaint that the controllers directed the accident aircraft to make right traffic in order to provide preferential treatment to the helicopter.  Wentworth maintained that the controller failed to issue traffic information and that she "should have been very familiar with the scenario she was faced with concerning the [accident aircraft] conducting a touch and go and the Agusta waiting to depart."  (Wentworth Report 1.)  Plaintiffs alleged throughout their administrative claims that the controller inappropriately instructed the helicopter to depart the runway before the accident aircraft departed.  These statements provided the factual foundation for this preferential treatment claim. The United States, therefore, had notice.

## IV.    CONCLUSION

For the foregoing reasons, we are satisfied that Form 95s filed by the Plaintiffs properly put the United States on notice of the claims included in the Second Amended Complaints filed by Plaintiffs.  Accordingly, the Motions to Dismiss for Lack of Subject Matter Jurisdiction will be denied.

An appropriate Order follows.

BY THE COURT:

_____

R. BARCLAY SURRICK, J.